Hazel Jean MATTHEWS,
et al., Plaintiffs,

v.

NEW CENTURY MORTGAGE
CORP., et al., Defendants.

No. 00–CV–1332.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 8, 2002.

Joseph F. Murray, Murray Murphy Moul & Basil—2, Kimberly M. Skaggs, Equal Justice Foundation—2, Columbus, OH, for Hazel Jean Matthews, et al., Ruth D. Morgan, Marie I. Summerall, Plaintiffs.

Michael J. Garvin, Hahn, Loeser & Parks, Cleveland, OH, Sidney Williams, Hahn Loeser & Parks—2, Irving Barry Marks, Columbus, OH, for New Century Mortgage Corp., Central Mortgage Inc., Equibanc Mortgage Corporation, Defendants.

## OPINION AND ORDER

CHATIGNY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Defendant's Motion to Dismiss the Plaintiffs' Second Amended Complaint. Jurisdiction is proper under 28 U.S.C. § 1331. Based on the following analysis, the Court **GRANTS** the Defendant's Motion in part and **DENIES** the Defendant's Motion in part.

## II. FACTS

### A. Ruth Morgan

Plaintiff Ruth Morgan,[1] then an 87–year–old single woman, was contacted in October 1997 by an employee of Century 21 Home Improvement and Incredible Exteriors, Inc. ("Century 21"). The Century 21 employee told Ms. Morgan that the siding on her home had to be replaced because it was dirty and not up to code. Approximately one week later, Ms. Morgan signed a contract with Century 21 for new siding costing $17,325 after assurances by a different Century 21 employee, Antonio Barrett, that Ms. Morgan could obtain a loan to finance her new siding.

---

1. The Plaintiffs filed a Suggestion of Death of Ms. Morgan on November 9, 2001. Presently, the Plaintiffs are pursuing her claims through a representative of her estate.

Mr. Barrett also indicated that the loan would finance other home repairs and a used car.

On November 7, 1997, Mike Lewis, an employee of Century Mortgage, Inc. ("Century Mortgage"), met with Ms. Morgan in her home regarding her loan, although Ms. Morgan had neither contacted Central Mortgage, nor sought Central Mortgage's services in any way. Mr. Lewis brought to the meeting papers for Ms. Morgan to sign regarding what she believed was an application for a home-improvement loan to cover the cost of her new siding. Ms. Morgan signed numerous papers, but did not receive copies of what she signed. At that meeting, Ms. Morgan was not informed of her right to cancel her loan application.

On November 24, 1997, Mr. Mark Hanna, then the manager of Southeast Equity Title Agency ("Southeast Equity"), met with Ms. Morgan and Mr. Barrett at Ms. Morgan's home so that she could sign closing papers for her loan. According to Ms. Morgan, she had no opportunity to review the loan documents before she signed them, nor did she receive copies of the loan documents for review either prior to or at closing. Nonetheless, she felt obligated to agree to the terms of the loan, as the siding had already been removed from her house.[2] Ms. Morgan was not informed at this meeting of her three-day right to cancellation. Ms. Morgan's closing statement listed the Defendant, New Century Mortgage Corp. ("New Century"), as the lender of a $49,000 loan.

In December 1997, Ms. Morgan received, at her request, copies of the paperwork that Mr. Hanna had brought to her house. The copies, however, were not signed by Ms. Morgan. The paperwork included a "Notice of Right to Cancel" that was neither filled out nor signed. The documents did not include a Truth–in–Lending statement, a Loan Agreement Contract with the lender, employment verification forms, or Final Uniform Residential Loan Application.

Along with the paperwork, Southeast Equity sent a check payable to Ms. Morgan in the amount of $2345.07. Ms. Morgan cashed the check, and then gave it to Mr. Barrett, who had informed her that he would use the money to take care of her home repairs, other than the siding, and to buy her a used car. Ms. Morgan, however, has not had contact with Mr. Barrett since she gave him that money, and she never received either the promised home repairs or the used car.

In January 1998, Ms. Morgan began making monthly payments on the loan in the amount of $459.97. Shortly thereafter, Ms. Morgan received notice that the amount of her monthly payments would increase. Then, in December 1998 and January 1999, New Century returned Ms. Morgan's payment checks, stating that $459.97 did not represent the total amount due. In March 1999, New Century, through its trustee, U.S. Bank Trust National Association, filed a complaint against Ms. Morgan for foreclosure of her home.

Despite her prior efforts, Ms. Morgan did not learn the actual terms of the loan she had obtained from New Century until it filed for foreclosure. Thus, she learned that the loan that she had believed was intended only to finance her home repairs for $17,325.00 was actually for the refinancing of her home for $49,000.00. It was also at this time that she learned for the first time that her occupation had been listed as "quilt-maker" on the loan application forms, and that a business card stat-

---

**2.** Since that time, Ms. Morgan's siding has been replaced. She alleges, however, that the work was done so poorly that it must be taken down and replaced again.

ing that Ms. Morgan was a quilt-maker with American Quilts was a part of her mortgage file. In actuality, Ms. Morgan was never involved in a quilt-making business, nor did she have business cards to that effect. Finally, Ms. Morgan learned that her monthly income had been stated as $1500.00 on the loan application form, with quilt-making as her source of income, when, in actuality, her total monthly income was $713.00 in social security benefits.

The Plaintiffs allege, based on the foregoing facts, that Ms. Morgan relied on the Defendant's representations that she was receiving a home improvement loan that would result in lower monthly bill payments when, in fact, she paid high rates and fees for a loan that depleted the equity she had in her home. They contend that, as a result of the foreclosure proceedings, Ms. Morgan suffered extreme emotional and physical distress.

### B. Hazel Jean Matthews

Some time during the summer of 1998, Plaintiff Hazel Jean Matthews, then a 69–year–old single woman, received a solicitation letter from Central Mortgage regarding loans for which she may be eligible. In response to the letter, Ms. Matthews called Central Mortgage about the possibility of obtaining a home improvement loan. Some time in August or September 1998, Mike Martinelli, a Century Mortgage employee, came to Ms. Matthews' home to speak to her about a loan. During this meeting, Ms. Matthews informed Mr. Martinelli that her monthly income consisted of approximately $2300.00 in social security and pension benefits. Ms. Matthews signed a loan application, but did not receive copies of what she signed at that time. On September 15, 1998, Ms. Matthews signed closing papers for her loan, but did not receive copies of the documents prior to closing, nor does she recall receiving such copies at the time of clos-

ing. The papers listed New Century as the lender of a $102,000.00 loan.

Soon thereafter, Ms. Matthews began making monthly payments of $891.36 on her loan. By August 2000, Ms. Matthews monthly payments increased to $1516.75. Around that time, Ms. Matthews learned for the first time, despite earlier efforts, the actual terms of her loan with New Century. She also learned that her occupation had been listed on her loan application as the owner of a business named "Crafts and Stuff," and that a business card so stating was part of her mortgage file. In actuality, Ms. Matthews has never been involved in, either as owner or employee, a craft business. Ms. Matthews learned, additionally, that her monthly income had been listed on her loan application as $5400.00.

The Plaintiffs assert that Ms. Matthews relied on the Defendant's representations that she was receiving a home improvement loan that would result in lower monthly bill payments when, in fact, she paid high rates and fees for a loan that depleted the equity she had in her home. The financial burden of her loan has allegedly caused Ms. Matthews physical harm and extreme emotional distress.

### C. Marie I. Summerall

In September 1998, Plaintiff Marie I. Summerall, then a 62–year–old single woman, was approached about making some improvements to her home. Shortly thereafter, Sam Walsh, an employee of Equibanc Mortgage Corp., contacted Ms. Summerall about financing her home improvements. Ms. Summerall informed Mr. Walsh that her total monthly income was approximately $1000.00, consisting of social security benefits and money earned by babysitting for friends and family. Mr. Walsh completed a loan application for Ms. Summerall, which she then signed. Ms.

Summerall did not receive copies of the papers she signed.

On October 23, 1998, Ms. Summerall signed closing papers on her loan. Ms. Summerall did not receive copies of the loan documents prior to closing, nor does she recall receiving such documents at the time of closing. Thus, Ms. Summerall had no opportunity to review the loan documents. Ms. Summerall was also never informed of her three-day right to cancellation. The loan documents listed New Century as the lender of a $50,250.00 loan.

Ms. Summerall began making monthly payments of $440.61 on her loan, though they subsequently increased to approximately $550.00. The Plaintiffs assert that some time later, despite Ms. Summerall's previous due diligence, she learned the actual terms of her loan. She also learned that her occupation had been listed on her loan application as the owner of a business named "Marie's In–Home Child Care," and that her monthly income was listed as $1500.00. In actuality, although Ms. Summerall has engaged in informal babysitting, she has never been involved in a formal day care business.

The Plaintiffs allege that Ms. Summerall relied on the Defendant's representations that she was receiving a home improvement loan that would result in lower monthly bill payments when, in fact, she paid high rates and fees for a loan that depleted the equity she had in her home. The Plaintiffs also claim that Ms. Summerall was led to believe that she was entering into a loan with a fixed interest rate when, in fact, the loan was for an adjustable rate mortgage, with an interest rate of 11.794%. They contend that she did not learn that her interest rate could change until October 2000.

The Plaintiffs contend that because Ms. Summerall has fallen behind in her loan payments, New Century has threatened foreclosure. They assert that the prospect of losing her home has caused Ms. Summerall extreme emotional distress and has exacerbated certain physical ailments.

## D. Ella Mae Arnold

In the summer of 1999, Plaintiff Ella Mae Arnold, then a 72–year–old single woman, was contacted by a mortgage broker regarding a loan to finance some home improvements. Ms. Arnold was informed that the loan would consolidate her bills and lower her then-current monthly loan payment of approximately $540.00. At the time that she was contacted, Ms. Arnold's income was approximately $650.00 in Social Security benefits.

On July 28, 1999, Ms. Arnold signed a Uniform Residential Loan Application along with closing documents for a new loan. Ms. Arnold did not receive copies of the loan documents prior to closing, nor does she recall receiving such documents at the time of closing. The documents listed New Century as the lender for a $60,000.00 loan.

Ms. Arnold began making monthly payments of approximately $560.00 on her new loan. In the fall of 2000, however, Ms. Arnold began having difficulties making her monthly payments. At that time, she learned for the first time, despite prior efforts, the actual terms of the loan she had received. She also learned that her occupation on her Uniform Residential Loan Application had been listed as "quiltmaker," and the owner of "Arnold's Quilts and Things." In actuality, Ms. Arnold has never been involved in a quilting business. Ms. Arnold also learned that her monthly income had been listed on her loan application as $2800.00.

The Plaintiffs allege that Ms. Arnold relied on the Defendant's representations that she was receiving a home improvement loan that would result in lower monthly bill payments when, in fact, she paid high rates and fees for a loan that

depleted the equity she had in her home. Ms. Arnold also thought that she was receiving a fixed interest loan rather than the $60,000 variable rate interest loan she actually received at 12.952% interest.

On January 4, 2001, New Century sent Ms. Arnold a notice of its intent to foreclose on her home, and sent a second notice on February 2, 2001. The Plaintiffs contend that the threat of foreclosure has caused Ms. Arnold physical harm and extreme emotional distress.

Based on the foregoing events, the Plaintiffs filed a complaint with this Court on September 14, 2000. On October 18, 2000, the Plaintiffs filed an Amended Complaint, which named New Century as a Defendant. Subsequently, on May 18, 2001, the Plaintiffs filed a Second Amended Complaint, which is the subject of New Century's Motion to Dismiss, now before this Court.

In their Second Amended Complaint, the Plaintiffs brought twelve claims against Defendants New Century, Central Mortgage, Equibanc Mortgage Corp., and K & R Equity, Inc.[3] The Plaintiffs' Complaint, in conjunction with Exhibit N attached thereto, a search warrant and accompanying affidavit in support of the warrant to search New Century's corporate office, sets forth the Plaintiffs' theory for New Century's liability. Specifically, the Plaintiffs allege that Central Mortgage referred a number of "stated income loans," high risk loans with high interest rates, to New Century. Numerous such loan packages referred to New Century contained false and fraudulently obtained information. The Plaintiffs contend that New Century obtained such loans with respect to each of the Plaintiffs.

The Plaintiffs allege, furthermore, that Rebecca Blankenship, the former president of Central Mortgage, had close personal ties with various employees at New Century (including her brothers and her husband, Kevin Blankenship, Jeff Snyder, and Robert Banhagel). They claim that, in the course and scope of their employment, Kevin Blankenship, Jeff Snyder, and Robert Banhagel all processed loans for New Century that had been referred to them by Central Mortgage. The Plaintiffs contend that New Century's relationships with Central Mortgage, Equibanc Mortgage, and K & R Equity constituted associations which engaged in a common, ongoing course of conduct to induce borrowers to enter into highly inflated loans with their common motivation being profit. The Plaintiffs contend that each of the Defendant mortgage brokers was acting in concert with New Century, and that all of the Defendants engaged in a pattern or practice of targeting single, elderly females for unfair loan practices. Finally, the Plaintiffs allege that the Defendants knew or should have known that the Plaintiffs' monthly incomes were insufficient to take on the debt obligations that were effectively forced upon them by the Defendants' fraudulent conduct, and that New Century, specifically, made the loans to the Plaintiffs despite the fact that New Century knew or should have known that the Plaintiffs had no ability to repay the loans.

Based on the foregoing, the Plaintiffs asserted against New Century claims under or of: (1) the Federal Fair Housing Act; (2) the Equal Credit Opportunity Act; (3) the Truth–in–Lending Act; (4) Ohio Rev.Code § 4112.02; (5) civil conspiracy; (6) common law fraud; (7) Ohio Rev.Code

**3.** By agreement of the parties, Defendants Central Mortgage and K & R Equity have been dismissed from the case. Although both Equibanc Mortgage Corp. and New Century remain as defendants, only New Century has filed a Motion to Dismiss the Plaintiffs' claims. Therefore, only the claims against New Century are now before the Court.

§ 2923.31 *et seq.,* the Ohio RICO statute; and (8) unconscionability. Defendant New Century has filed a Motion to Dismiss all of the Plaintiffs' claims against it pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim.

## III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 724 (6th Cir.1996). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Lillard,* 76 F.3d at 724 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994)). While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette,* 41 F.3d at 1064. While liberal, this standard of review does require more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993) (citation omitted). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir.1988).

## IV. ANALYSIS

### A. Statutes of Limitations

■ New Century argues that the Plaintiffs' claims brought pursuant to the Fair Housing Act ("FHA"), Equal Credit Opportunity Act ("ECOA"), and Truth–in–Lending Act ("TILA"), are all time-barred by the applicable statutes of limitations. The Court determines this issue by referring to the date on which the First Amended Complaint was filed, October 18, 2000. The Court looks to the date of the First Amended Complaint, rather than the earlier filing date of the original complaint, because New Century was first listed as a Defendant in the First Amended Complaint. *See* FED. R. CIV. P. 15(c)(3). Rule 15(c)(3) provides that an amendment of a pleading adding a party relates back to the date of the original pleading only if:

> within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by the amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Interpreting this rule, the Sixth Circuit has held that an amendment that adds a new party creates a new cause of action and does not relate back. *In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449–50 (6th Cir.1991) (citation omitted). Accordingly, the Court looks to the date of the First Amended Complaint because New Century was a newly added party that could not have known that an action would have been brought against it by the Plaintiffs but for a mistake concerning the identity of the proper party.

### 1. Fair Housing Act and Equal Credit Opportunity Act

Both the FHA and ECOA have two-year statutes of limitations. *See* 42 U.S.C. § 3613(a)(1)(A); 15 U.S.C. § 1691e(f). Therefore, if the Plaintiffs' FHA and ECOA claims accrued before October 18, 1998, they are barred by the statute of limitations, absent some reason for tolling the statutory period.

New Century asserts that this statutory period began to run when the Plaintiffs signed their applications for the loans at issue, as that is when they first had notice of the allegedly violative, predatory loan terms. Thus, the Defendants argue that the claims of Plaintiffs Morgan, Matthews, and Summerall are time-barred.[4] The Plaintiffs, however, allege that the statutory period did not begun to run at least until the time of closing, or later, based on a theory of equitable tolling.

 Equitable tolling applies to keep a statute of limitations period from running when inequitable circumstances prevent a plaintiff from suing before the statutory period runs. In particular, in cases of fraudulent concealment, the statute of limitations can be tolled when the plaintiff demonstrates that: "(1) the defendant took affirmative steps to conceal the plaintiff's cause of action; and (2) the plaintiff could not have discovered the cause of action despite exercising due diligence." *Jarrett v. Kassel*, 972 F.2d 1415, 1423 (6th Cir. 1992) (citation omitted).

 The Plaintiffs allege: (1) that New Century fraudulently concealed both the actual terms of their loans, and the fact that it targets single, elderly women for allegedly predatory loans; and (2) that they could not have discovered the terms of their loans any earlier than they did, despite their having exercised due diligence. Through the facts set forth in their Complaint, the Plaintiffs have made these allegations with the specificity called for by Fed.R.Civ.P. 9(b), which requires that "the circumstances constituting fraud ... be stated with particularity." Therefore, the Court finds that equitable tolling applies to prevent the FHA and ECOA two-year statutes of limitations from beginning to run until the dates the Plaintiffs allege they learned of the actual terms of their loans, and the alleged fraud committed upon them. Applying equitable tolling, none of the Plaintiffs' FHA and ECOA claims are time barred, as they each learned of the alleged fraud and statutory violations less than two years before the filing of their First Amended Complaint on October 18, 2000: Ms. Morgan learned of the alleged violations in March 1999; Ms. Matthews learned of the alleged violations in August 2000; and Ms. Summerall learned of the alleged violations in the fall of 2000. Because those dates all fall within the two-year statutory period, the Court finds that the Plaintiffs' FHA and ECOA claims are not time-barred.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' FHA and ECOA claims as barred by the applicable statutes of limitations.

### 2. Truth–in–Lending Act

New Century argues that the Plaintiffs' TILA claims are barred to the extent that the claims seek damages, though not with respect to the Plaintiffs' claims for rescission of their contracts. TILA actions for damages are subject to a one-year statute of limitations that begins to run at the time the alleged violation occurs. 15 U.S.C. § 1640(e). Thus, if the Plaintiffs'

---

4. New Century concedes that Ms. Arnold's claims are not barred by the two-year statutes of limitations.

damages claims accrued before October 18, 1999, they are barred by the statute of limitations, absent some reason for tolling the statutory period.

■ Because TILA requires lenders to provide certain information to a consumer before making a loan, a failure to provide such information will usually mean that a TILA claim accrues at the time of closing, or, at the latest, when the contract is performed, as that is when the violation occurs. *See Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037, 1041 (6th Cir.1984). In cases of fraudulent concealment of TILA information, however, the statute of limitations is equitably tolled, and the one-year period does not begin to run until the borrower discovers, or had reasonable opportunity to discover, the fraud involving the complained of TILA violation. *Id.* (citation omitted). Here, the Plaintiffs allege that New Century fraudulently concealed the actual terms of the Plaintiffs' loans until well after they had closed, and the Plaintiffs had begun payments. They assert, furthermore, that they could not learn the actual terms of their loans, despite their due diligence. Thus, assuming that the Plaintiffs' well-pleaded claims are true, which the Court must do in deciding a motion to dismiss, the statute of limitations on their claims did not begin to run until they discovered, or had reasonable opportunity to discovery, the fraud of which they complain.

■ Applying equitable tolling, Ms. Matthews' TILA claim is not time-barred, as she did not learn of the alleged TILA violations until August 2000, well within the one-year period. Similarly, neither Ms. Summerall's nor Ms. Arnold's claims are barred, as they allege that they did not learn of the TILA violations until the fall of 2000. Finally, Ms. Morgan's TILA claim for damages is also not time-barred, despite the fact that she learned of the alleged TILA violations in March 1999,

more than one year before the filing of the First Amended Complaint. Ms. Morgan's claim is not barred because, although the statute of limitations began to run in March 1999, it was tolled again on April 23, 1999, when Ms. Morgan filed an answer and third-party complaint in the state foreclosure action brought against her by New Century, through its trustee, U.S. Bank Trust National Association. *See Farrell v. Automobile Club of Michigan,* 870 F.2d 1129, 1133 (6th Cir.1989) (holding that the statute of limitations of the plaintiffs' ERISA claim was tolled by the filing of a similar claim in a state court that had concurrent jurisdiction over the claim); *Fox v. Eaton Corp.,* 615 F.2d 716, 719 (6th Cir.1980) (holding that equitable tolling of the statute of limitations on a Title VII claim was appropriate when the plaintiff had timely filed her claim in a state court that arguably had jurisdiction over the case before she filed a claim based on the same set of facts in district court). Both Ms. Morgan's answer and her third-party complaint gave New Century notice and knowledge of the claims being asserted against it, including the TILA claim, by setting forth the specific allegations that provide the basis for the claims herein. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 352, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (finding that statutes of limitations are generally intended to put defendants on notice of adverse claims); *Farrell,* 870 F.2d at 1133 (finding that it was fair to require the defendant to defend against claims in federal court when the plaintiffs' state court action provided notice and knowledge of the allegations). Thus, the statute of limitations as to Ms. Morgan's TILA claim was tolled during the pendency of the state court action. Since she dismissed her third-party complaint only two days before the filing of this action, the statutory period did not run, and her claim is not time-barred.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' TILA claims as time-barred.

### B. Fair Housing Act

The Plaintiffs allege that New Century's conduct in connection with their mortgages constitutes discrimination on the basis of gender, age, and marital status in violation of sections 804(b) and 805 of the FHA, 42 U.S.C. §§ 3604(b), 3605. New Century contends that the Plaintiffs have failed to state a claim against it under either of these provisions of the FHA.

#### 1. 42 U.S.C. § 3604(b)

 Section 804(b) of the FHA states, in pertinent part:

[I]t shall be unlawful—

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of ... sex ... [or] familial status ....

42 U.S.C. § 3604.

The Plaintiffs assert that their Complaint states a valid claim under this provision because the Defendant's actions, though not amounting to a literal "sale or rental," nonetheless relate to the sale or rental of a dwelling. The Court finds the Plaintiffs' argument to be without merit.

Section 804 of the FHA, 42 U.S.C. § 3604, is to be read liberally, so that its terms reach transactions that fall beyond the literal scope of selling or renting housing. *Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 344 (6th Cir.1994) (stating that "Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class") (citations omitted); *see Nationwide Mutual Ins. Co. v. Cisneros,* 52 F.3d 1351 (6th Cir.1995) (holding that § 3604 applies to discrimination in the provision of insurance); *Eva v. Midwest National Mortgage Bank,* 143 F.Supp.2d 862, 886 (N.D.Ohio 2001) (declaring that a literal sale or rental is not required for § 3604 to apply). Despite the breadth of the provision, however, it does not reach the particular transactions at issue in this case. To the contrary, this Court has specifically stated that transactions such as these, involving financial assistance requested for the purpose of improving, repairing, or maintaining a dwelling that the owner had previously acquired, fall outside the scope of § 3604. *Laufman v. Oakley Bldg. & Loan Co.,* 408 F.Supp. 489, 492 (S.D.Ohio 1976); *see also Eva,* 143 F.Supp.2d at 886 (stating that it is clear that § 3604 covers transactions related to acquiring a home, as opposed to § 3605, which covers "the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired").

As the transactions at issue in this case relate to the allegedly discriminatory provision of mortgages on homes that were previously acquired by the Plaintiffs, the Court finds that 42 U.S.C. § 3604(b) does not apply, and **GRANTS** the Defendant's Motion to Dismiss this claim.

#### 2. 42 U.S.C. § 3605

The Plaintiffs have also alleged that New Century violated § 805 of the FHA, 42 U.S.C. § 3605. That provision reads, in relevant part:

(a) In general

It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of ... sex ... [or] familial status ....

(b) "Residential real estate-related transaction" defined

As used in this section, the term "residential real estate-related transaction" means ... (1) The making or purchasing of loans or providing other financial assistance—(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling ....

The Plaintiffs' claim brought under this provision essentially amounts to a claim that New Century engaged in "reverse redlining." "Reverse redlining" is the situation in which a lender unlawfully discriminates by extending credit to a neighborhood or class of people (typically living in the same neighborhood) on terms less favorable than would have been extended to people outside the particular class at issue. *See* Frank Lopez, *Using the Fair Housing Act to Combat Predatory Lending*, 6 GEO. J. POV. L. & POL'Y 73, 77 (1999). In like fashion, the Plaintiffs in this case allege that New Century violated the FHA by granting them a loan on grossly unfavorable terms based on their age, sex, and marital status, and that such terms would not have been extended to credit applicants who were not elderly, unmarried women.

■ Although the issue has not been directly addressed by the Sixth Circuit,[5] other courts have held that reverse redlining claims are cognizable under the FHA. *See, e.g., Honorable v. Easy Life Real Estate System,* 100 F.Supp.2d 885, 892 (N.D.Ill.2000) (citing *NAACP v. American Family Mut. Ins. Co.,* 978 F.2d 287, 301 (7th Cir.1992)); *Hargraves v. Capital City Mortgage Corp.,* 140 F.Supp.2d 7, 20 (D.D.C.2000) (recognizing that predatory loan practices can make housing unavailable by putting borrowers at risk of losing the real property that secures their loans). The elements of a reverse redlining claim

brought under the FHA, 42 U.S.C. § 3605, are a variation of the elements that typically must be shown for a claim of discrimination under § 3605. A plaintiff invoking § 3605 must demonstrate the same factors that she would have to demonstrate for a Title VII claim. *See Babin,* 18 F.3d at 346 (finding that the plaintiffs must show: (1) that they were members of a protected class; (2) that they attempted to engage in a "real estate-related transaction" with the defendant and met all relevant qualifications for doing so; (3) that defendant lender refused to transact business with the plaintiffs despite their qualifications; and (4) that the defendant lender continued to engage in that type of transaction with other parties with similar qualifications).

■ To set forth a cognizable a reverse redlining claim under § 3605, essentially the same elements must be established, except that the plaintiff need not show that the lender refused to transact business, but only that the lender refused to transact business *on fair terms.* Specifically, to establish a *prima facie* case of discrimination in violation of § 3605 based on reverse redlining, the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for and was qualified for loans; (3) that the loans were given on grossly unfavorable terms; and (4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms. *See* Frank Lopez, *Using the Fair Housing Act to Combat Predatory Lending,* 6 GEO. J. POV. L. & POL'Y 73, 99 (1999). In the alternative, if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans on the basis of sex and marital status, the plaintiff need

---

**5.** Although the Sixth Circuit has not addressed a claim of reverse redlining, it has found that redlining, the practice of denying credit to specific geographic areas based on the income, race, or ethnicity of its residents, violates the FHA. *See Nationwide Mut. Ins. v. Cisneros,* 52 F.3d 1351 (6th Cir.1995).

not also show that the lender makes loans on more favorable terms to others. *See Hargraves,* 140 F.Supp.2d at 20 (finding that such a requirement would allow an injustice to continue so long as it was visited exclusively on one class of people).

This Court finds that the Plaintiffs have alleged sufficient facts to survive the motion to dismiss their claim under § 3605. First, the Plaintiffs clearly are members of a protected class. Second, they applied for and were qualified for loans. Third, the Plaintiffs have alleged that New Century gave them their loans on grossly unfavorable terms. Finally, while the Defendant is correct that the Plaintiffs have not alleged that other similarly situated people were given loans on more favorable terms, the Plaintiffs have nonetheless presented a cognizable claim, as they allege and may be able to show directly that New Century intentionally targeted them for unfair loans on the basis of their sex and marital status, thus eliminating the necessity of proving the fourth element of the *prima facie* case.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' claim for violation of 42 U.S.C. § 3605.

## C. Equal Credit Opportunity Act

■■■ The Equal Credit Opportunity Act ("ECOA") states, in pertinent part:

It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

(1) on the basis of ... sex or marital status, or age ....

15 U.S.C. § 1691(a)(1). ECOA claims of discrimination are evaluated using the same framework and burden allocation system that is applied to Title VII cases. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 406 (6th Cir.1998). Thus, for the Plaintiffs to establish a *prima facie* case for violation of ECOA, they must show: (1) that they are members of a protected class; (2) that they applied for credit from the Defendant; (3) that they were qualified for the credit; and (4) that their credit applications were denied despite their qualifications. *Mays v. Buckeye Rural Elec. Co-op., Inc.,* 277 F.3d 873 (6th Cir. 2002) (citation omitted).[6]

■■■ The elements for a *prima facie* case under ECOA can be adapted to the Plaintiffs' reverse redlining claims. *See Hargraves v. Capital City Mortgage Corp.,* 140 F.Supp.2d 7, 23 (D.D.C.2000) (finding that the plain language of the statutory provision indicates that it is not limited to loan applicants who were rejected). The plain language of the statute indicates that it applies to discrimination with respect to "any aspect of a credit transaction." A "credit transaction" has been deemed to include not only the extension of credit itself, but also terms of credit, along with various other matters. *See* 12 C.F.R. § 202.2(m). Thus, to survive the Defendant's Motion to Dismiss, the Plaintiffs need not allege that they were denied credit, so long as they allege that they were discriminated against in the terms of their credit based on the sex, marital status, or age.

It is undisputed that the Plaintiffs allege that they are members of a protected class who applied for and were qualified for credit. The Court finds that the Plaintiffs

---

**6.** This Court has previously held that, for a plaintiff to set forth a *prima facie* case for an ECOA violation, she must allege: (1) that she engaged in a statutorily protected activity; (2) that she suffered an adverse credit action; and (3) that a causal connection existed between the two. *McGee v. East Ohio Gas Co.,* 111 F.Supp.2d 979, 984 (S.D.Ohio 2000). These elements, however, apply to a retaliation claim brought pursuant to 15 U.S.C. § 1691(a)(3), *see Lewis,* 135 F.3d at 406, whereas the claim here is brought pursuant to 15 U.S.C. § 1691(a)(1).

have also alleged that, although they were not denied credit, they were discriminated against in the terms of the loans they were granted on the basis of their sex, marital status, or age.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' ECOA claims.

### D. Truth–in–Lending Act

The Plaintiffs' Complaint asserts that New Century violated "various provisions" of the Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* New Century, however, asserts that the TILA claim must fail because the Plaintiffs have failed to plead it with the specificity that is necessary to give notice of the claim that is being asserted.

■ TILA was designed to increase the information available to consumers in credit transactions. *Cornist v. B.J.T. Auto Sales, Inc.,* 272 F.3d 322, 326 (6th Cir. 2001). Among the information that must be available to a consumer in a credit transaction is the consumer's right to rescind. Specifically, 15 U.S.C. § 1635(a) provides, in pertinent part:

> in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later
> ....

The failure of a creditor to provide the consumer with notice of this right to rescind is actionable under the statute. *See Turoff v. May Co.,* 531 F.2d 1357, 1362 (6th Cir.1976) (recognizing the existence of a valid TILA action where a creditor fails to give notice of the right to rescind in transactions that fall within the ambit of 15 U.S.C. § 1635(a), but granting the defendant's motion to dismiss because the plaintiffs failed to show that the transaction at issue involved a security interest in their dwelling); *Eveland v. Star Bank, NA,* 976 F.Supp. 721, 726 (S.D.Ohio 1997) (denying the defendant's motion for summary judgment on the plaintiff's TILA claim where a genuine issue of fact remained as to whether the plaintiff received notice of her right to rescind).

■ Both Ms. Morgan and Ms. Summerall specifically allege that they were not given notice of their three-day right to cancel the loan agreement. Similarly, Ms. Matthews and Ms. Arnold allege that they did not receive copies of their loan documents (which would include notice of the right to rescind) prior to closing.[7] Thus, the Court finds that each of the Plaintiffs has properly alleged an actionable TILA violation against New Century.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' TILA claims.

### E. Ohio Rev.Code § 4112.02(H)

■ In addition to their FHA claim, the Plaintiffs have brought a claim under Ohio's analogous statute. New Century argues that the claim should be dismissed for the same reasons that the FHA claim should be dismissed.

---

7. Neither Ms. Matthews nor Ms. Arnold recalls whether she was provided with any loan documents at the time of closing. Assuming that they were, however, that fact does not destroy their TILA claim based on the fact that they were not provided with relevant loan documents prior to closing.

Ohio's statutory provision prohibiting discrimination in housing closely parallels the language of the FHA, and reads in relevant part:

> It shall be an unlawful discriminatory practice ... for any person to ... [d]iscriminate against any person in the making or purchasing of loans or the provision of other financial assistance for the ... rehabilitation, repair, or maintenance of housing accommodations, or any person in the making or purchasing of loans or the provision of other financial assistance that is secured by residential real estate, because of ... sex [or] familial status ....

OHIO REV. CODE § 4112.02(H)(3).

The parties have cited no Ohio authority, and the Court is not aware of any, that has set forth the elements that must be shown to establish a *prima facie* case under this specific provision of the Ohio Code. Because the provision so closely parallels the FHA, however, the Court may presume that Ohio courts would interpret their statute to grant the Plaintiffs at least as much protection as the FHA grants. *See Eva v. Midwest National Mortgage Bank,* 143 F.Supp.2d 862, 890–91 (N.D.Ohio 2001) (recognizing that both federal and Ohio fair housing claims may be analyzed using federal case law) (citation omitted); *Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.,* 94 Ohio Misc.2d 14, 703 N.E.2d 338, 340 (1993) (recognizing that, while the language of the Ohio statute closely parallels the language of the FHA, "the Ohio Civil Rights Act appears to contain language more favorable for maintaining a housing discrimination suit than the federal Fair Housing Act"). Thus, as the Court finds that the Plaintiffs have set forth sufficient evidence to survive the Defendant's Motion to Dismiss their FHA claim, *see supra* Part IV.B., so does it find that the Plaintiffs have set forth sufficient evidence to survive the Motion to Dismiss the analogous state claim.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' claims brought under Ohio Rev.Code § 4112.02(H)(3).

### F. Civil Conspiracy

 Under Ohio law, the tort of civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 700 N.E.2d 859, 868 (1998) (citations omitted). A plaintiff alleging civil conspiracy must demonstrate an underlying unlawful act for the conspiracy claim to succeed. *Id.* (citations omitted). In a conspiracy, the acts taken in furtherance of the conspiracy by one co-conspirator can be attributed to every co-conspirator, making each equally liable for the other's acts. *Id.* (citing 323 PROSSER & KEETON, TORTS § 46 (5th ed.1984)).

In *Williams,* the Supreme Court of Ohio examined a claim of civil conspiracy on strikingly similar facts to those presented here. There, a "pitchman" actively pursued business in a neighborhood where he knew there were many elderly people had owned their homes for a long time, free of mortgages. He encouraged these people, including the plaintiff, to get repairs done on their homes, and then arranged for them to get a loan from the defendant lender to finance the repairs. The pitchman took them to the defendant lender, even though other lenders were available, because certain employees at the lender's branch office had contacted the pitchman seeking referrals of loan customers. Under these circumstances, the court found that employees of the lender had conspired with the pitchman to defraud the plaintiff, and that the lender could be held liable for the torts of its employees. *Williams,* 700 N.E.2d at 868. The court further concluded that the lender's role in the conspiracy

was to "allow [the pitchman] to have access to loan money that was necessary to further his fraudulent actions against customers such as [the plaintiff]." *Id.* at 868–69. Thus, the court found that the lender's employees "affirmatively committed fraud by the very acts of making loans to [the plaintiff] and others," and that the lender was liable for that fraud by virtue of the conspiracy. *Id.*

 New Century argues that the Plaintiffs' conspiracy claim must be dismissed because the Plaintiffs have failed to allege sufficiently that New Century engaged in any underlying tortious conduct. New Century asserts that the Plaintiffs allege only that the mortgage brokers, such as Century Mortgage and its agents, committed fraudulent acts, not that New Century itself did so.

The Court finds that the Plaintiffs have adequately set forth a claim for civil conspiracy against New Century. First, the Complaint sets forth facts tending to show that New Century, or some of its employees, maliciously combined with various mortgage brokers to commit fraud upon the Plaintiffs in a way that resulted in actual damages. Specifically, the fact that New Century approved the allegedly fraudulent loan applications of each of the Plaintiffs, along with the fact that agents of New Century who processed loan applications had close personal ties with at least one of the mortgage brokers involved in the transactions at issue herein, is sufficient to meet the Plaintiffs' pleading requirements. The Court recognizes, in regard to this finding, that New Century can be held liable for the intentional torts of its employee loan agents committed within the scope of their employment. *Williams,* 700 N.E.2d at 868 (citing *Osborne v. Lyles,* 63 Ohio St.3d 326, 587 N.E.2d 825, 828–29 (1992) and *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584, 587 (1991)). Second, contrary to the Defendant's assertions, the

Plaintiffs sufficiently allege that New Century itself engaged in fraudulent and discriminatory conduct, by knowingly lending money for fraudulent and discriminatory loans. As in *Williams,* assuming the Plaintiffs can prove the existence of a conspiratorial agreement, as they allege, the Plaintiffs have properly alleged that New Century can be liable for the underlying tortious, fraudulent conduct of the mortgage brokers, as well as for the fraudulent conduct of its own loan agents.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' civil conspiracy claim.

### G. Common Law Fraud

 Under Ohio law, a claim of common law fraud requires a plaintiff to plead: " '(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.' " *Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 462 N.E.2d 407, 409 (1984) (quoting *Friedland v. Lipman,* 68 Ohio App.2d 255, 429 N.E.2d 456 (1980)).

 New Century argues that the Plaintiffs' fraud claim must fail because the Plaintiffs have failed to allege either that New Century made an affirmative misrepresentation or that New Century concealed a material fact while under a duty to disclose that fact to the Plaintiffs. Their argument hinges primarily on the fact that the only alleged material misrepresentations or concealments of fact, the falsification of the Plaintiffs' income and employment status on their loan applications, were attributed to the individual

brokers, not New Century, the lender. New Century also contends that, even as to the mortgage brokers, the Plaintiffs have failed to set forth their fraud allegations with the particularity necessitated by Fed. R. Civ. P 9(b), which requires a plaintiff pleading fraud to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993) (quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D.Mich.1992)).

First, the Court finds that, as to the mortgage brokers involved in the transactions herein, the Plaintiffs have alleged fraud with sufficient particularity, as the Plaintiffs have set forth the specific details of their meetings with the mortgage brokers, including the time and place thereof. They have set forth the content of the misrepresentation that each broker made regarding the Plaintiffs' income and employment status, as well as the brokers' misrepresentations that the Plaintiffs would be able to comply with the terms of their loans. Furthermore, they have alleged that the brokers were involved in a scheme to target target single, elderly women in an unfair manner, with the ultimate goal of defrauding them out of a substantial amount of money or equity. Finally, the Plaintiffs have alleged that as a result of the brokers' actions, they have lost substantial amounts of money and the equity in their homes.

Second, the Court finds that the Plaintiffs have also properly set forth a claim of fraud against New Century. As the Court finds that the Plaintiffs have properly asserted a civil conspiracy claim against New Century, the Court also concludes that New Century can be held liable for any acts committed by its co-conspirators in furtherance of their conspiracy. *See* discussion *supra* Part IV.F. Thus, because the Plaintiffs have properly alleged that the individual mortgage brokers engaged in fraudulent acts, New Century itself can be liable for those actions if the Plaintiffs succeed in proving a conspiracy existed between New Century and the mortgage brokers.

Therefore, the Court **DENIES** the Defendant's Motion to Dismiss the Plaintiffs' common law fraud claim.

### H. Ohio Pattern of Corrupt Activities Act

■ The Plaintiffs have alleged a claim against New Century for violation of the Ohio Pattern of Corrupt Activities Act ("PCA"), Ohio Rev.Code § 2923.31, *et seq.*, which is patterned after the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Ohio courts have found that the elements for a PCA violation are the same as those for a RICO claim. *See Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 629 N.E.2d 28, 32 (1993). Thus, a properly pleaded PCA claim must allege: "(1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Id.* (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Under the PCA, a "pattern of corrupt activity" consists of "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." OHIO REV. CODE § 2923.31(E).

The PCA defines an "enterprise" as "any individual, sole proprietorship, partnership, limited partnership, corporation ... or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." OHIO REV. CODE § 2923.31(C).

■ The Court finds that the Plaintiffs have pled their PCA claim sufficiently to survive the Defendant's motion for dismissal. First, the Plaintiffs allege that New Century has committed state or federal offenses that are specifically designated as predicate offenses by the PCA, including multiple acts of mail and wire fraud. *See* OHIO REV. CODE § 2923.31(I)(2); *Eva v. Midwest National Mortgage Bank,* 143 F.Supp.2d 862, 878–79 (N.D.Ohio 2001) (finding that the plaintiffs alleged that the defendants committed corrupt activity under the PCA when they alleged that the defendants committed multiple acts of conversion, mail fraud, and wire fraud). Second, the Plaintiffs sufficiently allege a pattern of corrupt activity. Specifically, they claim that New Century, through its alleged conspiracy with various mortgage brokers, committed separate instances of fraud against each of the Plaintiffs, which were tied to their general plan to defraud single, elderly women out of great sums of money and/or the equity in their homes. Third, the Plaintiffs allege that New Century participated in the affairs of the enterprise by serving as the lender on the allegedly fraudulent loans.

As the Court finds that the Plaintiffs have alleged each of the elements of a PCA violation with the specificity necessary to give New Century notice of the claim brought against it, the Court **DENIES** the Defendant's Motion to Dismiss this claim.

## I. Unconscionability

The Plaintiffs claim that the loan agreements involved here are unconscionable, and should be declared null and void by this Court. New Century moves to dismiss this claim on the ground that the Plaintiffs have failed to allege the facts necessary to support a claim of unconscionability.

■ The unconscionability doctrine consists of two prongs: (1) substantive unconscionability, i.e., unfair and unreasonable contract terms, and (2) procedural unconscionability, i.e.,. individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. *Jeffrey Mining Prod., L.P. v. Left Fork Mining Co.,* 143 Ohio App.3d 708, 758 N.E.2d 1173, 1181 (2001) (quoting *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.,* 113 Ohio App.3d 75, 680 N.E.2d 240, 243 (1996)). Substantive unconscionability refers to the contract terms themselves and their commercial reasonableness, while procedural unconscionability refers to the relative bargaining positions of the parties, including their age, education, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question. *Id.* (citations omitted). Both prongs must be satisfied for a contract to be found unconscionable. *Id.* (citing *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 621 N.E.2d 1294, 1299 (1993)).

■ The Court finds that the Plaintiffs have sufficiently pled facts necessary to withstand the Defendant's Motion to Dismiss their unconscionability claim. First, the Plaintiffs' Complaint asserts, as the facts as set forth therein indicate, that the terms of the contracts involved in these transactions were so one-sided in favor of New Century as to be unlawful. Second,

the Plaintiffs properly allege that the contracts also were procedurally unconscionable, in that the individual mortgage brokers had significantly greater bargaining power, business acumen, and experience than the Plaintiffs. The mortgage brokers presented to the Plaintiffs contracts that they or their employers had drafted, which they apparently did not even allow the Plaintiffs to read before signing. While the Court recognizes that New Century did not directly participate in the negotiating process with the Plaintiffs, New Century cannot escape liability on that basis. As the Court finds that the Plaintiffs have properly alleged a claim of civil conspiracy against New Century, New Century may be found liable for the alleged unconscionability of its co-conspirators.

Because the Court finds that the Plaintiffs have properly alleged claims of substantive and procedural unconscionability, the Court **DENIES** the Defendant's Motion to Dismiss this claim.

## V. CONCLUSION

Based on the foregoing analysis, the Defendant's Motion to Dismiss is **GRANTED** with respect to the Plaintiffs' claims brought under the Fair Housing Act, 42 U.S.C. § 3604(b). The Defendant's Motion to Dismiss is **DENIED** with respect to the Plaintiffs' claims brought under the Fair Housing Act, 42 U.S.C. § 3605, the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1), the Truth–in–Lending Act, 15 U.S.C. § 1601, *et seq,* Ohio Rev.Code § 4112.02(H), the Ohio Pattern of Corrupt Activities Act, Ohio Rev.Code § 2923.31, *et seq,* and the Plaintiffs' claims for civil conspiracy, common law fraud, and unconscionability.

**IT IS SO ORDERED.**