**ROSY BLUE, NV, Plaintiff,**

v.

**Edmond John LANE, Jr., et al., Defendants.**

**Case No. 1:10CV205.**

United States District Court, S.D. Ohio, Western Division.

Feb. 7, 2011.

862

Garry William O'Donnell, Yoss LLP, Boca Raton, FL, Kenyetta N. Alexander, Mark R. Osherow, Fort Lauderdale, FL, for Plaintiff.

Benjamin G. Stewart, Daniel E. Izenson, James Eugene Burke, Keathing Muething & Klekamp PLL, Cincinnati, OH, for Defendants.

### OPINION AND ORDER

MICHAEL R. BARRETT, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 12) and Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 20). Both motions are now ripe for review.

The Court finds the first motion (Doc. 12) to be **MOOT.** That motion addressed the original complaint in this action. Plaintiff has since, with leave of court, filed an amended complaint. (Doc. 18). Only the second motion (Doc. 20) addresses the amended complaint, and therefore, it is the only motion that will be considered in this opinion.

### I. FACTUAL BACKGROUND

The following alleged facts are taken from Plaintiff's Amended Complaint (Doc. 18).

Plaintiff Rosy Blue is an international distributor of diamonds that has been in the business for forty-five years. (Doc. 18, ¶ 8). Rosy Blue and Defendants Edmond Lane and Diamond Showroom have had a long-standing business relationship during which Lane and Diamond Showroom purchased diamonds from Rosy Blue. (*Id.,* ¶ 9). On or about March 6, 2006, Lane and Diamond Showroom contacted Rajesh Mehta, Senior Vice President for Rosy Blue, via letter to introduce Chad Davis from Davis & Associates as a potential buyer of Rosy Blue diamonds. (*Id.,* ¶ 13). The letter was on Diamond Showroom letterhead and it stated:

March 6, 2006

**FAX TO: RAJESH**

**M: EDDIE LANE**

Dear Rajesh,

The customer I am bringing with me is, Chad Davis, and I guarantee any of his purchases. He will want best prices for cash terms. I have seen him buy 1 million in one sitting. As in any transaction I do with customers I bring to Antwerp, I would appreciate 1% on gross purchases. This is to be totally confidential & confirm to me by note. My 1 % is to be paid after you are paid. Rajesh, please advise if you don't think you can supply quantities of 1-1/4 up to 5 ct diamonds all shapes @ prices he can resell to dealers. Personally, I told Chad if Rosy Blue, via Rajesh, can't supply him nobody could. If not correct let me know & I'll save you & me time. Our tentative plans are to arrive April 24th to meet with you @ 11:00 a.m. on the 24th & work with you all day the 25th too. I'll need 2 rooms at the Park Lane for the nights of 24th, 25th & 26th.

Warmest,

/s/ Eddie

Eddie

(Doc. 18–1 at PAGEID # 269). Lane then sent three follow up letters discussing travel arrangements for the planned trip and the types of diamonds Davis would be looking to purchase. (Doc. 18–2 at PAGEID # 271–73).

Rosy Blue agreed to meet Davis to consider a potential business relationship. (Doc. 18, ¶ 17). In or around April 2006, Lane and Davis traveled to Rosy Blue's principal office in Antwerp, Belgium. (*Id.,* ¶ 18). During the meeting, Lane, Diamond Showroom and Davis allegedly represented to Mehta that "Davis and Davis & Associates maintained: significant financial assets to purchase and secure the purchase of diamonds; an established business of selling diamonds; the financial ability to pay for all diamonds purchased in a commercially reasonable manner; and the clientele to market and sell large quantities of diamonds at a profit." (*Id.,* ¶ 19). Lane and Diamond Showroom also requested a one-percent commission from Rosy Blue on gross sales and a one-percent commission from Davis and Davis & Associates as the broker. (*Id.,* ¶ 20). At the meeting, Davis and Davis & Associates made an initial purchase of $905,713 worth of diamonds from Rosy Blue. (*Id.,* ¶ 23). Davis and Davis & Associates paid Rosy Blue in full for this purchase. (*Id.,* ¶¶ 18, 23, 27).

From April 2006 to October 2006, "Davis and Davis & Associates entered into nineteen (19) separate transactions with Rosy Blue," with Davis and Davis & Associates eventually purchasing or receiving on credit or consignment more than $6 million worth of diamonds from Rosy Blue (*Id.,* ¶ 24). Lane accompanied Davis on two or three additional visits to Rosy Blue's principal office. (*Id.,* ¶ 24). Through October 2006, Davis and Davis & Associates continued to pay for the diamonds in installments as they were sold. (*Id.,* ¶ 27). Rosy Blue alleges that Lane and Diamond Showroom knew or should have known

that Davis and Davis & Associates did not have the financial capabilities to purchase and pay for large quantities of diamonds, and had never seen him purchase $1 million in diamonds in one sitting, despite their representations to the contrary. (*Id.,* ¶¶ 28–29).

In or about November 2006, Davis informed Rosy Blue that he had misplaced more than $4 million worth of Rosy Blue diamonds at a food court in a mall in Orlando, Florida. (*Id.,* ¶¶ 31–32). Davis delayed six days before reporting to the Orange County Sheriff's Office that the diamonds had allegedly been stolen. (*Id.,* ¶ 35). The diamonds have not been recovered nor has the balance of $4,514,755.12 owed for the diamonds been paid to Rosy Blue by Davis, Davis & Associates, Lane or Diamond Showroom. (*Id.,* ¶ 35).

On March 16, 2007, Rosy Blue sued Davis and Davis & Associates in the United States District Court for the Middle District of Florida and obtained a judgment enforcing a settlement agreement between the parties, which was for $1 million against Davis and $5 million against Davis & Associates. (*Id.,* ¶ 38). Subsequently, Davis and Davis & Associates filed for Chapter 7 bankruptcy. (*Id.,* ¶ 39). Davis reportedly died in June 2010. (*Id.*) The judgment against Davis has not been satisfied. (*Id.,* ¶ 38).

Rosy Blue now has brought this action against Lane and Diamond Showroom, alleging breach of a guaranty, conspiracy to defraud, intentional misrepresentation, and negligent representation. Lane and Diamond Showroom have moved to dismiss all of the claims against them.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008) (quoting *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007)). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir.2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

When a plaintiff alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To state a claim with particularity, the plaintiff must "allege, at a minimum, the time, place, and content of the alleged misrepresentation; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Jones v. Petland, Inc.,* Nos. 2:08cv1128, 2:08cy1193, 2010 WL 536894, at *3–4, 2010 U.S. Dist. LEXIS 12538, at *10 (S.D.Ohio Feb. 11, 2010).

## III.  BREACH OF GUARANTY

Lane and Diamond Showroom argue that the breach of guaranty claim against them should be dismissed because (1) the

letter that Rosy Blue alleges is a guaranty cannot plausibly be interpreted as a guaranty; and (2) even if it can be interpreted as a guaranty, it is a limited guaranty that applied only to the first purchases made by Davis and Davis & Associates during the initial meeting between the parties and not to the subsequent purchases that are at issue in this lawsuit. Rosy Blue, on the other hand, argues that it has presented sufficient evidence of a legally enforceable, continuing guaranty that covers all purchases made by Davis and Davis & Associates, not just the purchases Davis and Davis & Associates made on the trip referred to in the March 6, 2006 letter.

■ "Under Ohio law, it is well settled that the interpretation of a guaranty is identical to the principles of regular contract interpretation." *New Market Acquisitions Ltd. v. Powerhouse Gym*, 154 F.Supp.2d 1213, 1219 (N.D.Ohio 2001).[1] Interpretation of a written guaranty is a question of law, not of fact, and is properly considered on a Rule 12(b)(6) motion to dismiss. *Tuffy Assoc. Corp. v. Felton Tires & Auto, Inc.*, No. 3:08CV2511, 2009 WL 2045675, at *3, 2009 U.S. Dist. LEXIS 59249, at *8 (N.D.Ohio July 10, 2009).

■ "A guarantor, like a surety, is bound only by the precise words of his contract." *G.F. Business Equip., Inc. v. Liston*, 7 Ohio App.3d 223, 224, 454 N.E.2d 1358 (1982) (quoting *Morgan v. Boyer*, 39 Ohio St. 324 (1883)). "The language used is to be understood in its plain and ordinary sense, as read in the light of the surrounding circumstances, the situation of the parties, and the object of the guaranty." *Merchants' Nat'l Bank v. Cole*, 83 Ohio St. 50, 60, 93 N.E. 465 (1910). The guaranty is to be construed in favor of the guarantor. *Tuffy*, 2009 WL 2045675, at *4, 2009 U.S. Dist. LEXIS 59249, at *11.

■ As an initial matter, the Court finds that Rosy Blue has alleged sufficient facts to show a legally enforceable guaranty. Read in the context of the surrounding circumstances, the situation of the parties and the object of the guaranty, the guaranty related to a potential business relationship between Lane, Diamond Showroom, Davis, Davis & Associates and Rosy Blue. The March 6, 2006 letter was from Lane on Diamond Showroom letterhead to "Rajesh" who is the Senior Vice President for Rosy Blue. (Doc. 18–1 at PAGEID # 269). Contrary to Lane and Diamond Showroom's assertions, the letter also specifically references Rosy Blue, stating: "Personally, I told Chad if *Rosy Blue, via Rajesh,* can't supply him nobody could." (Doc. 18–1 at PAGEID # 269) (emphasis added). The letter also refers to Chad Davis as a "customer" who Lane is bringing to Rosy Blue to purchase diamonds. (*Id.*) Although the letter does not specifically reference Davis & Associates, the reference to Davis as read in light of the surrounding circumstances and the object of the fax was intended to refer to Chad Davis from Davis & Associates.

As for the alleged guaranty, the plain language of the letter shows an intent by Lane and Diamond Showroom to be a guarantor. The letter plainly states: "I guarantee any of his purchases." (*Id.*) Thus, the language in the letter can plausibly be construed as a guaranty made by Lane and Diamond Showroom for diamonds purchased by Davis and Davis & Associates from Rosy Blue.

■ Even though the guaranty can plausibly be construed as a guaranty, the

1. The parties both cite to Ohio law in arguing their respective positions, and the Court thus will apply Ohio law here.

Court finds that it cannot plausibly be construed as a continuing guaranty that is applicable to Davis and Davis & Associates' purchases that are at issue in this lawsuit. A continuing guaranty is not limited in time or to a specific transaction, but instead is operative until it is revoked. *Beatley v. Izzo*, No. 09AP–50, 2009 WL 1910960, at *2, 2009 Ohio App. LEXIS 2757, at *6 (Franklin App. June 30, 2009) (citing *Merchants Nat'l Bank v. Cole*, 83 Ohio St. 50, 58, 93 N.E. 465 (1910)). "It is presumed that the parties did not intend a continuing guaranty, unless the language of the agreement permits of no other construction." *Id.*, at *2, 2009 Ohio App. LEXIS 2757, at *6. 2009 WL 1910960 A guaranty "will not be construed to be continuing absent a clear manifestation of such an intent." *Id.* Thus, if the language is equally capable of being construed as a continuing guaranty or a limited guaranty, the construction that will be adopted is the one that construes the guaranty to be limited. *Id. Accord: Tuffy*, 2009 WL 2045675, at *4–6, 2009 U.S. Dist. LEXIS 59249, at *11–15.

Controlling caselaw on this precise issue is sparse. However, there are several cases that assist the Court in interpreting the language of the guaranty. First, in *Morgan v. Boyer*, 39 Ohio St. 324, 325 (1883), the Ohio Supreme Court considered a letter with language similar to the March 6, 2006 letter at issue here, which did not specify whether the guaranty was limited or continuing. The letter written by the guarantor stated:

Messrs. MORGAN, ROOT & Co.: Gentrs: The bearer, Mr. H.A. Bowlus, is visiting your city buying a few goods in your line, and anything you may be able to sell him will be paid promptly, as agreed on, which I herewith guarantee. Yours respectfully, H.A. BOYER.

*Morgan*, 39 Ohio St. at 325. In that case, the plaintiffs argued that the guaranty was continuing because use of the term "is visiting" contemplated continuing visits. *Id.* at 326. The Court, however, found that the phrase "is visiting" could also be construed as "visiting at this time" such that the guarantee would be limited. *Id.* As it was at least just as likely that the guarantee was intended to be limiting as to be continuing, the Court determined that the guaranty was limited. *Id.*

In another early opinion by the Ohio Supreme Court in *Birdsall v. Heacock*, 32 Ohio St. 177 (1877), the Court similarly construed a letter that did not specify the type of guaranty to be a limited guaranty. In that case, a letter addressed to a lumber merchant stated: "Please send my son the lumber he asks for, and it will be all right." *Id.* at 182. The letter was written by a father for his son who was about to engage in the business of building houses and keeping a lumber yard for the sale of lumber. *Id.* The son, however, had no capital or credit of his own, and the father executed the guaranty to procure such credit for his son. *Id.* There were allegations that the father knew his son expected to carry on the lumber business for several seasons, but the letter contained no reference to that fact. *Id.* at 183. The lumber merchant was induced by the letter to deliver the lumber to the son. *Id.* at 182. After his first purchase, the son made multiple subsequent purchases and then failed to pay the amount due. *Id.* There was no evidence that the father knew that the lumber merchant was relying on the guaranty during the subsequent purchases or that he had acquiesced in it. *Id.* The Court concluded:

such an instrument should be confined to the immediate transaction, unless the language of the promise is sufficiently broad to show that it was meant to reach beyond the present, and render the guarantor answerable for future credits. The tendency of decision in this

country has, accordingly, been against construing guaranties as continuing, unless the intention of the parties is so clearly manifested as not to admit of a reasonable doubt.

*Id.* at 184. Thus, the Court affirmed the judgment of the common pleas court dismissing the cause of action. *Id.* at 184.

In a third case, *G.F. Business Equipment, Inc. v. Liston,* 7 Ohio App.3d 223, 454 N.E.2d 1358 (Franklin Cty.1982), which is cited by Rosy Blue in its memorandum in opposition, the Court found a letter to be a continuing guaranty. The letter at issue stated:

As per your request for a new Personal Guarantee Covering Purchases by THE LISTON COMPANY, you may use this letter as such a guarantee for purchases made by THE LISTON COMPANY from G.F. up to a maximum of $50,000.

*Id.* Thereafter, the plaintiff sold merchandise to the Liston Company on open account until that customer went bankrupt owing plaintiff money for purchases. *Id.* at 223, 454 N.E.2d 1358. The Court determined that "there is no language in the guaranty which purports to limit its duration or its application to any specific purchases. By its terms, it assured payment for '*purchases* ... up to a maximum of $50,000.'" *Id.* at 1360. The Court further determined that the nature of the parties' business strongly supported finding a continuing guaranty because the company had received a personal guaranty from the prior owner, merchandise had been supplied worth more than $50,000, and there was an expectation that periodic purchases would be made from the plaintiff over a prolonged interval of time. *Id.* at 1360.

Based on the foregoing caselaw, the Court finds that in the present case the guaranty was limited rather than continuing. First, like in *Morgan,* there is language in the March 6, 2006 letter that refers to a specific transaction or set of transactions that would potentially occur when the parties met in or around April 2006.

Second, the use of the terms "any purchases," "purchases," and "quantities" when read in the context of the March 6, 2006 letter could mean any purchases or quantities of diamonds purchased at any time or any purchases or quantities of diamonds purchased during the specific transaction referenced in the March 2006 letter. Both interpretations of the language are equally plausible.

Third, the nature of the parties' business relationship does not strongly support a conclusion of a continuing guaranty. Unlike in *G.F. Business Equipment,* Rosy Blue and Davis and Davis & Associates did not have a long-standing business relationship. and neither Davis nor Davis & Associates had ever purchased diamonds from Rosy Blue. *See* 7 Ohio App.3d at 224–25, 454 N.E.2d 1358. The allegations indicate that the first meeting between Rosy Blue and Davis was to "consider a potential business relationship." (Doc. 18, ¶ 17). Thus, at the time of the initial meeting referenced in the March 6, 2006 letter, there was no firm confirmation that Davis or Davis & Associates would even do business with Rosy Blue, let alone make multiple purchases from Rosy Blue. Although Rosy Blue, Lane and Diamond Showroom may have expected Davis and Davis & Associates to make subsequent purchases if a business relationship was entered into, there is no clear reference to that fact in the March 6, 2006 letter. *See Birdsall,* 32 Ohio St. at 183. Further, even though Rosy Blue may have subsequently furnished diamonds to Davis and Davis & Associates in reliance upon the guaranty, there is no allegation that this reliance was known to Lane or Diamond Showroom, or acquiesced in by either of them. *See Birdsall,* 32 Ohio St. at 183.

Even if such a relationship existed between Rosy Blue and Davis and Davis & Associates, the decision in *G.F. Business Equipment* is still distinguishable. First, there is no allegation that Lane or Diamond Showroom had at any other time made a continuing guaranty to Rosy Blue. Second, unlike the guaranty in *G.F. Business Equipment*, the guaranty here included specific references to a specific transaction such that even if the parties contemplated future credits, there is no clear manifestation of the intent of Lane or Diamond Showroom to guaranty the future credits extended to Davis and Davis & Associates.

The language of the guaranty, at best, could be reasonably and equally construed as a limiting guaranty or a continuing guaranty. In such a situation, the Court is required to construe the guaranty to be limited in time rather than continuing. *Beatley*, 2009 WL 1910960, at *2, 2009 Ohio App. LEXIS 2757, at *6; *Tuffy*, 2009 WL 2045675, at *4–6, 2009 U.S. Dist. LEXIS 59249, at *11–15. As a limited guaranty, it covered only purchases made during the initial meeting referenced in the March 6, 2006 letter and did not cover subsequent purchases made by Davis and Davis & Associates. That means that Lane and Diamond Showroom could not be liable for Davis and Davis & Associate's failure to pay the amount due on the subsequent purchases. As the only purchases on which Rosy Blue seeks to recover in this lawsuit are the subsequent purchases made by Davis and Davis & Associates, the Court finds that Rosy Blue has not stated a plausible claim for breach of a guaranty against Lane or Diamond Showroom for which relief may be granted, and that claim must be dismissed. *See Tuffy*, 2009 WL 2045675, at *4–6, 2009 U.S. Dist. LEXIS 59249, at *11–15 (granting in part

defendant's motion to dismiss with respect to purchases not covered by a guaranty that the court determined was limited, not continuing); *Birdsall*, 32 Ohio St. at 177, 184 (affirming the trial court's demurrer[2] judgment in favor of the defendant because the guaranty was limited, not continuing, and thus did not cover any purchases made after the initial purchase).

## IV. *CONSPIRACY TO DEFRAUD*

■ To establish a claim for civil conspiracy, Rosy Blue must show: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir.2000). To survive a motion to dismiss, a conspiracy claim "must be pled with some degree of specificity and [ ] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987).

Lane and Diamond Showroom first argue that Rosy Blue has failed to allege the required underlying act, which in this case is fraud. Courts are not in agreement as to the standard for pleading fraud as the unlawful underlying act of a conspiracy. Some courts apply the Rule 9(b) heightened pleading standard while others have applied only the lower standard of Rule 8. *In re Nat'l Century Fin. Enters., Inv. Litig.*, 504 F.Supp.2d 287, 328–29 (S.D.Ohio 2007). The Sixth Circuit has not addressed the issue. *Id.*

■ The Court finds that under either the Rule 8 or Rule 9(b) pleading standard, Rosy Blue has sufficiently pled an underlying unlawful act. As stated above, under

---

**2.** Under modern rules of civil procedure, the demurrer has been replaced by a motion to dismiss for failure to state a claim. Fed. R.Civ.P. 12(b).

Rule 9(b), the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally. *Petland*, 2010 WL 536894, at *3, 2010 U.S. Dist. LEXIS 12538 at *9 (citing Fed.R.Civ.P. 9(b)). At a minimum, the plaintiff must allege "the time, place, and content of the alleged misrepresentation; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Id.* Rosy Blue alleges that one misrepresentation was made in the March 6, 2006 letter from Lane and Diamond Showroom to Rosy Blue and the content of the misrepresentation was that they had witnessed Davis "buy 1 million in a single sitting," even though they never had witnessed him make such a purchase. (Doc. 18, ¶ 62).[3] Rosy Blue also alleges that the fraudulent scheme and intent was to induce Rosy Blue to sell large quantities of diamonds to Davis even though he lacked the necessary qualifications so that Lane and Diamond Showroom could obtain a percentage of the sales. (*Id.*, ¶¶ 13–15, 25, 59). The alleged injury is the loss of over $4 million in diamonds. (*Id.*, ¶ 67–68).

Rosy Blue also alleges that other misrepresentations were made at the first meeting between the parties in or around April 2006 when Lane, Diamond Showroom, Davis, and Davis & Associates indicated that Davis and/or Davis & Associates maintained "significant assets to purchase and secure the purchase of diamonds; an established business of selling diamonds; the financial ability to pay for all diamonds purchased in a commercially reasonable manner; and the clientele to market and sell large quantities of diamonds at a profit." (*Id.*, ¶¶ 18, 23, 63). The alleged scheme, intent and injury are the same as alleged with respect to the misrepresentation made in the March 6, 2006 letter. These allegations satisfy both Rule 9(b) and Rule 8's pleading requirements.

Next, Lane and Diamond Showroom argue that Rosy Blue has not alleged any facts that "plausibly suggests that Lane and Davis engaged in a conspiracy to do anything." (Doc. 20 at PAGEID # 313). Specifically, they attack Rosy Blue's failure to allege facts showing Lane was involved in the purchase or loss of the $4 million in diamonds, or how or why the defendants would have conspired to defraud Rosy Blue. The Court disagrees.

The allegations contained in the Amended Complaint support an inference that Lane, Diamond Showroom, Davis and Davis & Associates had participated in a conspiracy and had a common conspiratorial objective. Rosy Blue specifically alleges that the conspiratorial objective was "to induce Rosy Blue into parting with millions of dollars worth of diamonds for their own improper profit and financial benefit." (Doc. 18, ¶ 59). In support, Rosy Blue cites to the March 6, 2006 letter in which Lane vouched for Davis' purchases, and it alleges that Lane accompanied Davis on a visit to Rosy Blue in or around April 2006 and on two or three more occasions between April 2006 and October 2006. (*Id.*, ¶¶ 13–15, 25). Rosy Blue further cites to the March 6, 2006 letter to show that Lane and Diamond Showroom planned to receive a commission from Rosy Blue for each purchase,

**3.** Although Rosy Blue also alleged that Lane and Diamond Showroom falsely represented that it would guaranty any of Davis' purchases, the Court has found that the guaranty was limited and did not cover any subsequent purchases made by Davis. As there are no allegations that indicate that Lane and Diamond Showroom would not have guaranteed Davis' initial purchases as stated in the March 6, 2006 letter, there are no allegations supporting a fraud claim on that representation. Thus, that representation will not be considered here.

and that during the April 2006 meeting between the parties Lane and Diamond Showroom again requested a commission from both Rosy Blue and Davis for purchases and sales made by Davis. (*Id.*, ¶¶ 16, 20). Rosy Blue alleges that the economic incentive was Lane and Diamond's motivation for being involved in the conspiracy. (*Id.*, ¶¶ 12, 59). Davis allegedly also had an economic incentive to be involved due to his obtainment of large quantities of diamonds at "best prices" on credit or consignment to be resold to dealers. (*Id.*, ¶¶ 13–15; Doc. 18–1 at PAGEID # 269). These allegations adequately specify the time, place, common objective and basis for the conspiracy claim.

Further, although Lane and Diamond Showroom argue that Davis' loss or theft of the diamonds was an individual act, the argument is insufficient to justify a dismissal of the conspiracy claim. Construing the allegations in the light most favorable to Rosy Blue, it is plausible that Davis' loss or theft of the diamonds was an act in furtherance of the conspiracy. Additionally, in a conspiracy, the act of a co-conspirator may be attributed to another co-conspirator such that the misappropriation of the $4 million in diamonds may be attributable to Lane and Diamond Showroom if proven to be coconspirators. *Williams v. Aetna Finance Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998); *Automotive Finance Corp. v. WW Auto*, No. 2:04CV261, 2005 WL 1074331, at *4, 2005 U.S. Dist. LEXIS 9038, at *11 (S.D. Ohio April 20, 2005). Thus, contrary to Lane and Diamond Showroom's argument, Rosy Blue has set forth allegations that could support the existence of a conspiracy.

## V. *MISREPRESENTATION CLAIMS*

To allege a claim for intentional misrepresentation, the plaintiff must state that there was a material representation that was made recklessly or falsely and with intent to mislead another into relying on it, and the party was injured by its justifiable reliance on the representation. *Matthews v. New Century Mortgage Corp.*, 185 F.Supp.2d 874, 889–90 (S.D.Ohio 2002). A negligent misrepresentation is actionable where one who in the course of his business or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions without using reasonable care or competence in communicating the information, and the party is injured by its justifiable reliance thereon. *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).

Lane and Diamond Showroom attack Rosy Blue's claims for intentional misrepresentation and negligent misrepresentation on three separate bases: (1) Rosy Blue does not attribute specific false statements to them; (2) Rosy Blue has not alleged that it justifiably relied on any statement made by Lane when it sold diamonds to Davis months later or that anything Defendants did otherwise was a proximate cause of Rosy Blue's loss; and (3) the claims directly contradict allegations made in prior litigation against Davis and are barred by judicial estoppel. The Court will address each of these arguments in turn.

First, the Court finds that Rosy Blue sufficiently attributed specific false statements to Lane and Diamond Showroom. As explained in section IV above, Rosy Blue alleged the time, place, and content of the alleged misrepresentations, the fraudulent scheme, the fraudulent intent of the defendant; and the injury resulting from the fraud. Malice, intent, knowledge, and other conditions of mind were at least averred generally.

Second, the Court finds that construing the pleadings in favor of Rosy Blue, Rosy Blue has alleged justifiable reliance and

proximate cause with sufficient particularity to survive a motion to dismiss. Rosy Blue alleged it relied on Lane and Diamond Showroom's false representations by delivering diamonds to Davis and Davis & Davis on credit and consignment. (Doc. 18, ¶ 77). Rosy Blue further alleged that its reliance was justified because it was based on Rosy Blue's long-standing business relationship with Lane and Diamond Showroom as well as the industry custom of established customers introducing and vouching for new customers. (*Id.*, ¶¶ 9, 11, 22). Although Lane and Diamond Showroom argue that the reliance was not justified because Rosy Blue should have performed its own due diligence, reliance on a representation of fact may be reasonable even if "he might have ascertained the falsity of the representation had he made an investigation." *Field v. Mans*, 516 U.S. 59, 70, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (citing Restatement (Second) of Torts, § 540 (1976)). Thus, to be justifiable, the party's reliance need not conform to the standard of a reasonable man. *Id.* While there are some limits to this general proposition of law, the Court finds that upon viewing the allegations in the amended complaint in the light most favorable to Rosy Blue, Rosy Blue has alleged sufficient facts to support its claims for fraudulent misrepresentation and negligent misrepresentation.

Further, the inference in favor of Rosy Blue requires the Court to find that Rosy Blue has sufficiently alleged a causal link between the alleged misrepresentations and its loss. Rosy Blue has alleged that but for the alleged misrepresentations and its justifiable reliance thereon, Rosy Blue would not have sold Davis diamonds on credit and consignment and thus would not have lost $4 million. (Doc. 18, ¶ 77–79). While Lane and Diamond Showroom argue that multiple subsequent transactions occurred between Davis and Rosy Blue so as to break the causal link between Rosy

Blue's reliance and its loss, the Court finds that the allegations make it is plausible that Rosy Blue was relying on the alleged misrepresentations during subsequent transactions that led to the loss.

The Court also finds that Davis' loss or theft of the diamonds does not necessarily break the causal chain because if Lane and Diamond Showroom's alleged misrepresentations allowed Davis to obtain the diamonds, then they also provided Davis with the opportunity to lose or steal the diamonds. *See Central State Stamping Co. v. Terminal Equip. Co.*, 727 F.2d 1405, 1410 (6th Cir.1984) ("Simpson's subsequent misappropriation of a portion of the second payment is not material to the [fraud] inquiry. If Central States made the payment in reliance on the telephone conversation [with the Bank], this provided the opportunity for Simpson to misapply the funds."). It is not for the Court to decide on a motion to dismiss whether the alleged misrepresentations were in fact the "but for" cause of the loss. *See id.* (jury decided whether a bank's misrepresentations to a business that induced the business to provide money to a third party for a specific purpose were the proximate cause of a misapplication of funds by the third party).

As to whether Rosy Blue's misrepresentation claims are barred by judicial estoppel, the Court finds they are not. The doctrine of judicial estoppel bars a party from "(1) asserting a position that is contrary to the one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of the final disposition.'" *Browning v. Levy*, 283 F.3d 761, 765 (6th Cir.2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217 (6th Cir.1990)). The Sixth Circuit has stated:

the doctrine of judicial estoppel is utilized in order to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir.1990).... [T]he evil to be avoided is colorfully described as "the perversion of the judicial machinery," "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," and "having [one's] cake and eating it too." Although this court has not addressed whether bad faith or an attempt to mislead the court is a necessary prerequisite to the application of judicial estoppel, other courts have held that judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence.

*Browning,* 283 F.3d at 776.

■ The Court does not find the application of judicial estoppel to be appropriate in this case. Rosy Blue's position in the Florida litigation with respect to misrepresentations allegedly made by Davis and relied upon by Rosy Blue are not clearly inconsistent with its position in this case. In the former litigation, Rosy Blue did not allege that the misrepresentations were exclusively attributable to Davis or that it exclusively relied on Davis' misrepresentations. Although Lane and Diamond Showroom are not explicitly mentioned in the Amended Complaint in the Florida action, there is no clear indication that Rosy Blue intended to exclude Lane and Diamond Showroom from liability. Further, there is no evidence that in the Florida litigation Rosy Blue attempted to conceal the fact that Lane or Diamond Showroom may have made misrepresentations to it nor has there been any attempt by Rosy Blue to conceal the Florida allegations from this Court.

Importantly, Lane and Diamond Showroom have not established that the prior court adopted the contrary position either as a preliminary matter or as part of the final disposition, as required for judicial estoppel to apply. Lane and Diamond Showroom do not argue that the court adopted Rosy Blue's alleged contrary position in a preliminary matter. Instead, they argue that Rosy Blue received a favorable judgment in the Florida litigation. However, the judgment in the Florida litigation was entered to enforce a settlement reached between the parties. *See Rosy Blue, N.V. v. Davis,* Case No. 6:07cv00465, Docs. 102–12, 2007 WL 1155925 (M.D.Fla. March 16, 2007). "When an ordinary civil case is settled, there is no 'judicial acceptance' of anyone's position and thus there can be no judicial estoppel in a later proceeding." *Teledyne Indus. v. NLRB,* 911 F.2d 1214, 1219 (6th Cir.1990). Accordingly, Rosy Blue's intentional and negligent misrepresentation claims have been adequately pled. Lane and Diamond Showroom's motion to dismiss these claims is therefore denied.

## VI. CONCLUSION

Based on the foregoing, the Court finds that Lane and Diamond Showroom's first motion to dismiss (Doc. 12) is **MOOT** and the second motion to dismiss (Doc. 20) is **GRANTED in PART** and **DENIED in PART.** The breach of guaranty claim is hereby **DISMISSED.** This action shall proceed on the civil conspiracy, intentional misrepresentation and negligent misrepresentation claims against Lane and Diamond Showroom.

**IT IS SO ORDERED.**